[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 13, 2010
JOHN LEY
ACTING CLERK

No. 09-10270
Non-Argument Calendar
_____

D. C. Docket No. 07-00162-CV-MEF

CHRIS E. TURNER,

Plaintiff-Appellant,

versus

CITY OF AUBURN,

Defendant-Third-Party-
Plaintiff-Appellee,

LARRY LANGLEY, et al.,

Defendants,

CWH RESEARCH, INC.,

Third-Party Defendant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(January 13, 2010)

Before EDMONDSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Chris E. Turner, a black male firefighter, appeals the district court's grant of summary judgment in favor of his employer, the City of Auburn ("Auburn"), in Turner's race discrimination and retaliation suit brought under Title VII and 42 U.S.C. § 1983. No reversible error has been shown; we affirm.

In 1987, black firefighters filed a race discrimination suit against Auburn. As part of the settlement of that suit (the "Settlement Agreement"), Auburn hired Plaintiff as a full-time firefighter in 1991. The Settlement Agreement also required that Auburn use an outside assessment center for filling Lieutenant positions; no similar requirement applied to the filling of Team Leader positions. For Team Leader positions, at least before August 2005, a structured interview procedure was employed; it used applicant interviews and hypothetical scenarios to determine promotion. Beginning in August 2005, Auburn used a written exam in the Team

2

Leader promotion process: to continue in the Team Leader selection process, an applicant was required to score a minimum of 70 points on the written exam.[1]

Plaintiff and five other firefighters -- the others were white men -- took the Team Leader exam in August 2005; Plaintiff and one white applicant failed to achieve the 70-point cutoff score and were not allowed to proceed to the next step in the promotion process. Approximately six months after administration of the Team Leader exam, all thirteen Team Leaders (including one who was promoted to the position after the August 2005 exam) were reclassified as Lieutenants.[2] At the time of the reclassification, the Team Leader and Lieutenant positions were of the same grade, enjoyed equal pay, and performed the same job responsibilities. One of the Team Leaders reclassified to Lieutenant was black.

Plaintiff filed suit complaining that he was discriminated against on the basis of race when he was not promoted to Team Leader and again when he was not promoted to Lieutenant in February 2006 when Team Leaders were reclassified as Lieutenants. Plaintiff also contends that he was retaliated against for being a party to the 1991 Settlement Agreement and suits in 1996 and 2002, as well as for filing

---

[1]Although Plaintiff takes issue with the switch to a written exam, that switch came about after Plaintiff obtained materials about the structured interview process that compromised Auburn's use of that procedure.

[2]The other applicants who scored above the 70-point cutoff were promoted in May 2006 when additional positions opened at a new fire station.

EEOC charges in January 2006. Plaintiff also asserts that Auburn has engaged in a pattern or practice of racial discrimination that has created a disparate impact against black firefighters.

The district court concluded that no reasonable fact finder could find that Plaintiff had established a prima facie case on his discrimination, retaliation or disparate impact claims. We agree.

We review a district court's grant or denial of summary judgment de novo, viewing the record and drawing all reasonable inferences in favor of the non-moving party. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). Summary judgment is due to be granted when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986).

To establish a prima facie case of discrimination in a failure to promote case,[3] the plaintiff's burden is satisfied by showing these things: (1) he is a member of a protected group; (2) he was qualified for and applied for the promotion; (3) he was rejected in spite of his qualifications; and (4) the person who received the

---

[3]Plaintiff relies on circumstantial evidence to which the three-step burden shifting framework established in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973), and Texas Dep't of Cmty Affairs v. Burdine, 101 S.Ct. 1089 (1981), applies.

4

promotion was not a member of the plaintiff's protected group and had lesser or equal qualifications.  See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004).

Plaintiff failed to establish a prima facie case: although he was qualified to (and did) apply for the Team Leader position, Auburn required a minimum score of 70 points on the Team Leader exam to proceed in the selection process.  Plaintiff's sub-70 point score disqualified him for promotion to Team Leader.

And even if we were to accept Plaintiff's argument that his qualifications to apply for the position satisfy prima facie case requirements, he failed to show that a less or equally qualified person was promoted instead of him (the fourth prima facie case element) and failed to show that Auburn's proffered reasons for not promoting him -- his sub-70 point score -- were pretextual.  That Plaintiff believed in the superiority of his qualifications -- that his seniority and experience should trump his poor performance on the exam -- is not determinative; in reviewing a Title VII plaintiff's qualifications, we focus on the employer's requirements and do not second-guess the employer's business judgment.  See, e.g., Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) ("a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one

5

that might motivate a reasonable employer."). [4]

To establish a prima facie case of retaliation, a plaintiff must present evidence showing that (1) he engaged in statutorily protected expression, (2) the employer took action that would have been materially adverse to a reasonable employee or job applicant, and (3) some causal relation existed between the two events. See Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). The district court determined that Plaintiff established no prima facie case on the Team Leader or Lieutenant claims: no reasonable fact finder could find that Plaintiff established a causal link between his protected expression and denial of the Team Leadership promotion; and no reasonable fact-finder could find that Auburn was aware of the protected activity of Plaintiff that was close in time to the Lieutenant reclassification.

Even if we were to assume arguendo that Plaintiff satisfied his burden of establishing a prima facie case of retaliation, Plaintiff failed to raise a genuine issue of material fact on pretext. No reasonable fact finder could find that Auburn's proffered legitimate, nonretaliatory reasons for its decisions were not what actually

---

[4]Plaintiff also failed to show that he was qualified for the Lieutenant position. No person was reclassified as a Lieutenant who was not already a Team Leader. Plaintiff failed too to show that a less or equally qualified person was promoted instead of him and failed to show that Auburn's proffered reasons for not reclassifying him -- only Team Leaders were reclassified -- were pretextual. As the district court observed, whether the reclassification violated the Settlement Agreement negotiated some fifteen years earlier -- as Plaintiff argues -- is not an issue requiring resolution in this discrimination suit.

motivated Auburn's conduct and were, instead, pretext for retaliation.  See Corbitt v. Home Depot U.S.A., Inc., 573 F.3d 1223, 1248 (11th Cir. 2009).

To establish a prima facie case of disparate impact discrimination, a plaintiff must show (1) a significant statistical disparity among members of different racial groups; (2) a specific facially-neutral employment policy or practice; and (3) a causal nexus between that specific policy or practice and the statistical disparity. See Cooper v. Southern Co., 390 F.3d 695, 724 (11th Cir. 2004) *(overruled on other grounds by* Ash v. Tyson Foods, Inc., 126 S.Ct. 1195 (2006)).

Plaintiff proffered no statistical evidence in support of his disparate impact claim: he failed to show that the challenged practices resulted in a statistical disparity among members of different racial groups; and he failed to compare the racial composition of persons in the labor pool qualified for the positions at issue with those persons actually holding those positions.  And again, even if we were to assume arguendo that Plaintiff established a prima facie case of disparate impact discrimination, Auburn proffered evidence -- unrebutted by Plaintiff -- that its promotion procedures were job-related and consistent with its business needs.

We have reviewed all claims of error advanced by Plaintiff;[5] we conclude

_____

[5]Plaintiff also advanced a claim pursuant to section 1983.  Because discrimination claims under section 1983 have the same elements of proof and analytical framework as those falling under Title VII, see Rioux v. City of Atlanta, GA, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008) ("Title VII and section 1983 claims have the same elements where the claims are based on the

7

that Auburn's motion for summary judgment was due to be granted.

AFFIRMED.

---

same set of facts"), Plaintiff's failure to establish a Title VII violation is dispositive of his section 1983 claim.