[PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

-------------------------------------

No. 01-16638

-------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 22, 2002
THOMAS K. KAHN
CLERK

D.C. Docket No. 00-01844-CV-J-S


ANTHONY WEEKS, CHARLES
WILLINGHAM, MELISSA FRYE,
ANGELA GABLE, JARIR JACKSON,

Plaintiffs-Appellees,


versus

HARDEN MANUFACTURING
CORP.,

Defendant-Appellant.


---------------------------------------
Appeal from the United States District Court
for the Northern District of Alabama
---------------------------------------
**(May 22, 2002)**

Before CARNES and FAY, Circuit Judges, and MARTIN[*], District Judge.

MARTIN, District Judge:

In this interlocutory appeal of a retaliatory discharge case, the court is asked to determine whether an employee's refusal to agree to a compulsory arbitration provision regarding employment discrimination claims constitutes protected activity for the purposes of alleging a prima facie case of retaliation. We find that it does not. We therefore vacate in part the district court's order and remand for further proceedings consistent with this opinion.

## I.   BACKGROUND

The appellant, Harden Manufacturing Corporation ("Harden"), employed the appellees, Anthony Weeks, Charles Willingham, Melissa Frye, Angela Gable and Jarir Jackson (hereinafter "plaintiffs") at its facility in Haleyville, Alabama. On January 8, 1999, Harden issued new employee handbooks to the plaintiffs which included an arbitration provision. The arbitration provision mandated that all claims by a Harden employee arising out of his/her employment must be resolved through arbitration, including all "Title VII claims or actions, and all actions based upon any form of

---
[*] Honorable Beverly B. Martin, U.S. District Judge for the Northern District of Georgia, sitting by designation.

discrimination."[1]  Harden required all of its employees to agree to the arbitration provision as a condition of continued employment.  The plaintiffs refused to agree to the new arbitration policy, and  Harden terminated their employment on January 14, 1999.

After timely filing charges with the Equal Employment Opportunity Commission ("EEOC"), the plaintiffs filed suit on June 30, 2000 in the Northern District of Alabama.  The complaint included five counts for relief, including claims for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203. Harden thereafter moved for judgment on the pleadings or in the alternative for summary judgment on all counts.  In its motion, Harden admitted that it terminated

---

[1] The arbitration provision stated in full:

Harden Manufacturing Corporation and I each agree and understand that we choose arbitration instead of litigation to resolve any dispute between us.  Harden Manufacturing Corporation and I each understand that we have a right or opportunity to litigate disputes through a court, but we prefer to resolve our disputes through arbitration.  Each of the parties to this employment arbitration policy voluntarily and knowingly waive any right they have to a jury trial either pursuant to arbitration under this clause or pursuant to a court action by Harden Manufacturing Corporation.  Harden Manufacturing Corporation and I agree and understand that all disputes arising under case law, statutory law and all other laws, including but not limited to, all contract, tort, workmen's compensation, retaliatory discharge, Title VII claims or actions, and all actions based upon any form of discrimination (cumulatively referred to herein as "employment related disputes" for the purposes of this contract) based on a legal claim will be subject to binding arbitration in accordance with this contract.

3

the plaintiffs for refusing to sign the arbitration provision. However, Harden argued that the plaintiffs did not engage in statutorily protected conduct because they could not have reasonably believed that the mandatory arbitration provision was an unlawful employment practice. Based upon this, Harden took the position that the plaintiffs had failed to establish a prima facie case of retaliation.

The district court considered the motion as one for summary judgment and granted summary judgment to Harden on all claims except for the retaliation claims under the various employment discrimination statutes. The district court found that although the arbitration provision may have been lawful, the plaintiffs reasonably, albeit mistakenly, believed that the arbitration provision was unenforceable. The court therefore held that plaintiffs' refusal to sign the arbitration policy was protected activity and the discharge of the plaintiffs constituted actionable retaliation. In finding that the plaintiffs had a reasonable belief that arbitration provisions were unenforceable, the district court relied on the Ninth Circuit's decision in Duffield v. Robertson Stevens & Co., 144 F.3d 1182 (9th Cir. 1998) and the EEOC's position that such provisions violate public policy. See EEOC Notice No. 915.002, Policy Statement on Mandatory Binding Arbitration of Employment Discrimination Disputes as a Condition of Employment (July 10, 1997). Harden thereafter moved to certify the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which the district

4

court granted. We granted the petition for review.

## II. DISCUSSION

We review the district court's grant or denial of a motion for summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party. See Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). The sole issue in this appeal is whether the plaintiffs had a reasonable belief that Harden engaged in an unlawful employment practice by requiring the plaintiffs to sign the agreement to arbitrate.

It is well established in this circuit that to successfully allege a prima facie retaliation claim under either Title VII, the ADEA or the ADA, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. See Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1201 (11th Cir. 2001); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260 (11th Cir. 2001); Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998). The first element is the only one in dispute in this case.

To establish that a plaintiff engaged in statutorily protected expression, we have held that a plaintiff must show that she "had a good faith, reasonable belief that the

employer was engaged in unlawful employment practices." Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997) (citing Rollins v. State of Fla. Dept. of Law Enforcement, 868 F.2d 397, 400 (11th Cir. 1989)).  In Little, this standard was succinctly described as follows:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component.  A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.  It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

Id.

Harden does not contest that the plaintiffs subjectively believed that Harden was engaged in an unlawful employment practice by requiring arbitration of employment discrimination claims. Rather, Harden contends that the plaintiffs did not have an objectively reasonable belief that the mandatory arbitration agreement was an unlawful employment practice.  This is so, according to Harden, because such provisions have been unequivocally approved by the Supreme Court in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) and Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001), by Congress through the Civil Rights Act of 1991, and by this circuit in

6

Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698 (11th Cir. 1992). The plaintiffs respond that although authority existed which approved arbitration provisions at the time the plaintiffs refused to sign the arbitration provision, sufficient contrary authority also existed at the time, such as the Ninth Circuit's decision in Duffield and EEOC policy statements, to give the plaintiffs a reasonable belief that Harden's conduct was unlawful. We agree with Harden that the plaintiffs' belief that Harden was engaged in an unlawful employment practice by requiring the arbitration of employment discrimination claims was not objectively reasonable.

Although previously disfavored by the courts, arbitration agreements to resolve disputes between parties have now received near universal approval. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27, 105 S. Ct. 3346, 3354, 87 L. Ed. 2d 444 (1985) ("[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution."). Congress demonstrated its approval of arbitration by enacting the Federal Arbitration Act ("FAA") in 1925. The FAA's purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place agreements to arbitrate on the same footing as other contracts. See Dean Witter Reynolds Inc. v.

Byrd, 470 U.S. 213, 219-220, and n.6, 105 S. Ct. 1238, 1241-1242, and n.6, 84 L. Ed. 2d 158 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 510 n.4, 94 S. Ct. 2449, 2453 n.4, 41 L. Ed. 2d 270 (1974).  Its primary substantive provision states that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA.  See Mitsubishi, 473 U.S. at 628, 105 S. Ct. at 3354 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").  Similarly, arbitration agreements encompassing claims brought under federal employment discrimination statutes have also received near universal approval.

In Gilmer, the plaintiff employee had agreed, as a condition of employment, that arbitration would be his exclusive remedy for any controversy arising out of his employment. Later, when he was terminated, the plaintiff filed suit alleging violations of the ADEA. The employer responded with a motion to compel arbitration under the FAA.  In determining whether the ADEA precluded compulsory arbitration of claims

8

arising under the statute, the Supreme Court held that arbitration agreements are enforceable with regard to claims arising under a federal statute, "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue [as indicated] in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." Gilmer, 500 U.S. at 26, 111 S. Ct. at 1647. The Court found that nothing in the text, legislative history, or the purposes of the ADEA demonstrated a congressional aim to preclude arbitration, and thus concluded that compulsory arbitration agreements were enforceable under the FAA with respect to claims under the ADEA. See id. at 26-27, 111 S. Ct. at 1647.

In keeping with the reasoning of Gilmer, we found in Bender that Title VII claims may also be subject to compulsory arbitration. We noted that there was "no reason to distinguish between ADEA claims and Title VII claims. Like Gilmer, [the plaintiff] has not waived her right to a forum, for she can pursue her claims in arbitration, and if the arbitration proceedings are somehow legally deficient, she may return to federal court for review." Bender, 971 F.2d at 700 (citation omitted).[2]

---

[2] We recognize that in Brisentine v. Stone & Webster Engineering Corp., 117 F.3d 519 (1997), we held that an arbitration provision in a collective bargaining agreement in that case was not enforceable under the ADA. The reasons we gave were that the employee did not personally agree to the arbitration provision, the provision did not mention arbitration of statutory claims, and the provision was one-sided because it gave the employer but not the employee the right to insist on arbitration. In this case, in contrast, the arbitration provision that was submitted to the employees was for individual employee approval, it expressly covered federal statutory claims, and it made arbitration available to both sides.

Almost every other circuit is in agreement with our decision in Bender that Title VII does not prohibit mandatory arbitration for claims arising under the statute. See, e.g., Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 204-06 (2d Cir. 1999), cert. denied, 531 U.S. 1069, 121 S. Ct. 756, 148 L. Ed. 2d 659 (2001); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 7 (1st Cir. 1999); Koveleskie v. SBC Capital Mkts., Inc., 167 F.3d 361, 365 (7th Cir. 1999), cert. denied, 528 U.S. 811, 120 S. Ct. 44, 145 L. Ed. 2d 40 (1999); Seus v. John Nuveen & Co., 146 F.3d 175, 182 (3d Cir.1998), cert. denied, 525 U.S. 1139, 119 S. Ct. 1028, 143 L. Ed. 2d 38 (1999), abrogated on other grounds, Blair v. Scott Specialty Gases, 283 F.3d 595 (3d Cir. 2002); Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 837 (8th Cir. 1997); Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1482-83 (D.C. Cir. 1997); Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 882 (4th Cir. 1996), cert. denied, 519 U.S. 980, 117 S. Ct. 432, 136 L. Ed. 2d 330 (1996); Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1487 (10th Cir. 1994); Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 307 (6th Cir. 1991); Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229, 230 (5th Cir. 1991).

In addition to our holding in Bender, many of the above cited cases from other circuits have recognized that Congress has approved the use of arbitration to resolve employment discrimination claims in the Civil Rights Act of 1991 ("1991 Act"). The

1991 Act, passed shortly after Gilmer, specifically includes a provision on arbitration, stating that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title."  Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081, reprinted in 42 U.S.C. § 1981 app. at 509 (1994).  Almost every circuit to consider this question has construed the language in the 1991 Act favoring arbitration to apply to Title VII claims.  This has happened most often in the context of a required Form U-4 regarding employment of securities brokers.  See, e.g., Desiderio, 191 F.3d at 204-05 ("We conclude . . . that the text of § 118 evinces a plain Congressional purpose of encouraging arbitration of Title VII claims and not one of precluding such arbitration."); Koveleskie, 167 F.3d at 365 (same); Seus, 146 F.3d at 182 (same); Austin, 78 F.3d at 881-83 (same).

Other circuits have also recognized that the ADA includes language favoring arbitration which is identical to the 1991 Act.  See 42 U.S.C. § 12212 ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this chapter."); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 143 (1st Cir. 1998) ("[F]ar from evidencing an intention to preclude arbitration, [the statute] can only be interpreted as favoring it.").  We have also noted in dicta that the ADA permits

11

compulsory arbitration of claims arising under the statute.  See Brisentine, 117 F.3d at 523 ("Encouragement is towards the other end of the pole from preclusion. Congress in the ADA did not manifest an intention to preclude a collective bargaining waiver of a judicial remedy for an arbitration remedy.").

Finally, last year the Supreme Court in Circuit City held that the FAA was applicable to all contracts of employment except those contracts involving transportation workers.  In so holding, the Court examined the FAA's exemption clause of section 1 in the context of the Ninth Circuit ruling in Craft v. Campbell Soup Co., 177 F.3d 1083 (9th Cir. 2001), which interpreted the exemption clause to apply to all contracts of employment, such that no contracts of employment would be governable under the FAA.[3]  See Circuit City, 532 U.S. at 110, 121 S. Ct. at 1306.  In reversing the Ninth Circuit's expansive reading of section 1, the Supreme Court analyzed the text and legislative history of the FAA, as well as the contrasting views of other appellate courts, and determined that the section 1 exemption was intended to apply only to the employment contracts of transportation workers.  See id. 532 U.S. at 111-21, 121 S. Ct. at 1307-12.

The only circuit not to construe the Supreme Court's holding in Gilmer or the

---

[3] The exemption clause of section 1 of the FAA states: "[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.

1991 Act's language approving of arbitration to apply to federal employment discrimination claims is the Ninth Circuit in Duffield, a pre-Circuit City case. The court in that case suggested that the text of section 118 in the 1991 Act is ambiguous when viewed in conjunction with the general purpose of the Act, and concluded that the goal of expanding remedies was at odds with compulsory arbitration, which would limit a plaintiff's options for recourse. See Duffield, 144 F.3d at 1192-93. The Duffield decision has been specifically considered and rejected by other courts. See, e.g., Desiderio, 191 F.3d at 205; Koveleskie, 167 F.3d at 365.[4] Further, the viability of Duffield has been recognized to be in considerable doubt in light of the later decided Circuit City. See, e.g., Borg-Warner Protective Servs. Corp. v. EEOC, 245 F.3d 831, 838 (D.C. Cir. 2001) ("We cannot say whether the Ninth Circuit will continue to adhere to Duffield in the face of the Supreme Court's Circuit City decision. . . ."); Farac v. Permanente Med. Group, 186 F. Supp. 2d 1042, 1045 (N.D. Cal. 2002) ("While the focus may have been different, Circuit City implicitly overruled Duffield.

---

[4] For example, the Second Circuit in Desiderio stated the following:

We are unable to adopt the view expressed in Duffield. Compulsory arbitration does not defeat the right to compensatory and punitive damages, or fee shifting because an arbitrator is also empowered to grant this kind of relief. Moreover, it is untenable to contend that compulsory arbitration conflicts with the Act's provision for the right to a jury trial, because Gilmer ruled that compulsory arbitration clauses could be enforced in claims under the ADEA, a statute that explicitly provides for jury trials. Nor are we convinced that the underlying purposes of Title VII and the 1991 Civil Rights Act inherently conflict with the imposition of compulsory arbitration.

Desiderio, 191 F.3d at 205.

Circuit City expresses a strong federal presumption in favor of enforcing arbitration agreements."); Scott v. Burns Int'l Sec. Servs., Inc., 165 F. Supp. 2d 1133, 1137-38 (D. Hawaii 2001) ("[T]he Supreme Court's contrary statement in Circuit City that arbitration agreements do not contravene the policies of congressional enactments or the protections of federal law . . . implicitly overrules th[e] holding of Duffield.").

We see no reason to depart from our own precedent, the mandate of the Supreme Court, and the holdings of almost every other circuit to find that compulsory arbitration agreements constitute an unlawful employment practice. We are not persuaded that the plaintiffs in this case could have "reasonably believed" that such agreements were an unlawful employment practice at the time they refused to agree to the policy in 1999. The Supreme Court's decision in Gilmer, our holding in Bender and the passage of the 1991 Act all transpired almost ten years before the facts of this case occurred. Thus, the plaintiffs had reasonable notice that compulsory arbitration agreements for employment discrimination claims were lawful.

We further note that the plaintiffs' "reasonable belief" that compulsory arbitration agreements constitute unlawful conduct in violation of the opposition clauses of Title VII, the ADEA and the ADA is not even supported by the holding of Duffield and the EEOC policy statement at issue. Duffield and the EEOC policy do not state that requiring employees to sign arbitration agreements itself violates Title

14

VII. Instead, they stand for the proposition that compulsory arbitration agreements are "unenforceable" or are "inconsistent" with Title VII. See Duffield, 144 F.3d 1199 ("In view of the fact that the context, language, and [legislative] history of the 1991 Act together make out a conclusive case, that Congress intended to preclude compulsory arbitration of Title VII claims, we think it inescapable that Form U-4 is unenforceable as applied to such claims." (citation and internal quotation marks omitted)); EEOC Policy Statement ("[T]he Commission believes that such agreements are inconsistent with the civil rights laws. . . ."). However, simply because an agreement is unenforceable or even "illegal" does not mean that employers who require employees to sign the agreements as a condition of employment are guilty of violating Title VII, the ADEA or the ADA. The District of Columbia Circuit has recognized this distinction in Borg-Warner:

> . . . To say that an agreement is illegal is not to say that employers who require employees to sign the agreements as a condition of employment are guilty of violating Title VII. Calling an unenforceable agreement "illegal" is "misleading insofar as it suggests that some penalty is necessarily imposed on one of the parties, apart from the court's refusal to enforce the agreement. In some cases, the conduct that renders the agreement unenforceable is a crime, but this is not necessarily or even usually so." E. ALLAN FARNSWORTH, CONTRACTS § 5.1 (2d ed. 1990).
>
> Even Duffield does not say that companies requiring employees to sign arbitration agreements are guilty of violating Title VII. Although the Duffield court refused, with respect to Title VII claims, to enforce a general arbitration agreement, the court enforced the same agreement in regard to state law claims. See 144 F.3d at 1203. In the face of that

ruling, we cannot see how an employer exposes itself to punitive damages by having employees sign such an agreement. Furthermore, the notion that [an employer] could be held liable in punitive damages for insisting upon an arbitration agreement in the face of the Supreme Court's Circuit City opinion and the decisions of eleven courts of appeals upholding such agreements is, we think, far-fetched.

245 F.3d at 837-38 (affirming district court's dismissal for lack of standing of employer's declaratory action against EEOC to declare that compulsory arbitration agreements do not violate Title VII).

It is also worthwhile to briefly review the statutes under which plaintiffs brought their action. Each statute sets forth a list of what constitutes an unlawful employment practice. The definition of "unlawful employment practices" as set forth in Title VII includes such activities as making hiring or other job classification decisions based upon an individual's race, color, religion, sex or national origin. See 42 U.S.C. § 2000e-2(a). The list is similar for the ADA, which prohibits, for example, hiring, enacting job classifications or testing employees in any way that would adversely affect an employee because of a disability. See 42 U.S.C. § 12112(b). The ADEA also includes a list of unlawful "employer practices" such as refusing to hire an individual or discharging or reducing the wages of an employee because of his or her age. See 29 U.S.C. § 623(a). To attempt to extrapolate from these lists the premise that the action of an employer requiring employees to arbitrate employment disputes is an "unlawful" employment practice would require an

intellectual dishonesty in which this court will not engage.

We agree with the court in <u>Borg-Warner</u> that an unenforceable arbitration agreement does not amount to an unlawful employment practice under the federal employment discrimination laws. We find nothing in the statutory text of Title VII, the ADEA or the ADA which identifies compulsory arbitration agreements to be an unlawful employment practice. The court thus concludes that the plaintiffs could not have had a reasonable belief that the refusal to sign such agreements constituted protected activity even when relying on <u>Duffield</u> and EEOC policy.

Finally, the plaintiffs may not stand on their ignorance of the substantive law to argue that their belief was reasonable. As we have stated previously, "[i]f the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge." <u>Harper v. Blockbuster Entm't, Inc.</u>, 139 F.3d 1385, 1388 n. 2 (11th Cir. 1998); <u>Little</u>, 103 F.3d at 960. Accordingly, we find that the plaintiffs have not alleged a prima facie case of retaliation under Title VII, the ADEA or the ADA, and their claims must be dismissed.

### III. CONCLUSION

The district court's order is VACATED in part and REMANDED for further

proceedings consistent with this opinion.