[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 23, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15604
Non-Argument Calendar

_____

D. C. Docket No. 04-00694-CV-T-E

DEBRA MCCONNELL,

Plaintiff-Appellant,

versus

WESTPOINT STEVENS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(February 23, 2006)**

Before DUBINA, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Debra McConnell appeals the district court's grant of summary judgment in

favor of the employer on her retaliation claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-3(a). Because McConnell could not establish either that she engaged in a statutorily protected activity or that her employment was terminated because of her protected activity, we affirm.

## I. Background

The facts of this case, presented in the light most favorable to McConnell, are as follows: McConnell was employed by WestPoint Stevens, Inc. ("WestPoint Stevens") as an occupation health nurse until her termination on October 29, 2003. At the time she was terminated, McConnell was under the direct supervision of Kim Williams and Chad Butts. Williams was supervised by both Butts and Woodrow "Woody" Sluss. Butts was in turn supervised by Tommy Bledsoe.

In July 2003, McConnell learned that Djuna Black, a nurse under her supervision, planned to resign. She met with Williams and Butts to discuss the resignation, and Butts told her to begin looking for a replacement. McConnell also discussed Black's resignation with Bledsoe. McConnell understood from her conversation with Bledsoe that he would temporarily transfer another WestPoint Stevens nurse to assist McConnell while she searched for a permanent replacement. Bledsoe disputes McConnell's recollection of their conversation, claiming that he specifically instructed McConnell not to hire a replacement.

2

McConnell eventually hired a nurse to fill Black's position. When she realized that she had misunderstood Bledsoe's instructions, she rectified the situation (the woman she hired withdrew). Nevertheless, McConnell was subsequently terminated for committing "gross insubordination" by disobeying Bledsoe's orders. The parties do not dispute that, although McConnell was informed of her termination by Butts and Williams, the decision to terminate her was made by Bledsoe and Sluss (Bledsoe asked Sluss to investigate the matter).

McConnell claimed that she was not terminated for hiring a replacement for Black, but rather in retaliation for previously complaining to Butts and Williams that Angela Michelle Davidson, another employee, was being sexually harassed by her supervisor, Terry Edmonson. McConnell also believed that Leroy Abney, another supervisor, was contributing to the harassment at Edmonson's direction.

Shortly thereafter, McConnell went to Williams and reported that Edmonson did not like Davidson. She suggested to Williams that Edmonson's negative feelings toward Davidson stemmed from a failed relationship between Edmonson and a former employee with whom Davidson had been friendly.

In August 2003, McConnell reported to Butts that Davidson felt that she was being harassed and was considering filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). McConnell further stated that "if [the

3

EEOC] were to question me, I would have to tell the truth and have to tell them . . . I felt like Terry harassed her."

McConnell never specifically complained to either Sluss or Bledsoe about Edmonson's alleged harassment of Davidson. McConnell did mention Edmonson's harassing behavior to Bledsoe in passing, but did not specifically mention Davidson's name. At the time they decided to terminate McConnell, neither Sluss nor Bledsoe knew about McConnell's complaints to Butts and Williams regarding Edmonson's alleged harassment of Davidson.

Davidson herself complained about Edmonson's conduct to Butts, Williams, Bledsoe, and Sluss. She ultimately filed an EEOC complaint on October 16, 2003, although her complaint does not mention McConnell's name and does not indicate that another employee made complaints to management on her behalf. A copy of Davidson's complaint was forwarded to Sluss by the EEOC on October 23, 2003, six days before McConnell was terminated.

McConnell filed a Title VII employment action against WestPoint Stevens, Inc. ("WestPoint Stevens"), alleging that she was terminated in retaliation for reporting the sexual harassment of another employee.[1] WestPoint Stevens moved

---

[1] In her complaint, McConnell also included a count of negligent training under state law. The district court dismissed that claim without prejudice. Because McConnell does not challenge that decision on appeal, she has abandoned it. Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998).

for summary judgment, asserting that McConnell failed to establish a prima facie case of retaliation because she could not show that she engaged in a statutorily protected activity or that there was a causal connection between her conduct and her termination. Alternatively, WestPoint Stevens argued they had a legitimate non-discriminatory reason for terminating McConnell: her gross insubordination in disobeying a direct order. The court granted summary judgment, finding that McConnell had not engaged in a statutorily protected activity.

## II. Discussion

McConnell argues that the district court applied the wrong standard when it concluded that she had not engaged in a statutorily protected activity. She argues that she was not required to show that Edmonson actually engaged in sexual harassment to establish an objectively reasonable belief that the employer's conduct was unlawful. She further asserts that she provided sufficient evidence to create a genuine issue of material fact as to whether she had an objectively reasonable belief that her employer acted unlawfully. According to McConnell, her actions were objectively reasonable in light of her co-worker's repeated complaints about sexual harassment, the fact that management took no steps to resolve the problem, and her own observation of the harassment.

We review a district court's grant of summary judgment de novo, viewing

5

the evidence in the light most favorable to the non-moving party. Skrtich v. Thorton, 280 F.3d 1295, 1299 (11th Cir. 2002).

Pursuant to Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . , because he has opposed any practice made an unlawful employment practice . . . , or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, "a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." Stavropolous v. Firestone, 361 F.3d 610, 616 (11th Cir. 2004). Here, the parties agree that McConnell suffered an adverse employment action.

To establish that she engaged in a statutorily protected activity, McConnell must show that she "had a good faith, reasonable belief that [WestPoint Stevens] was engaged in unlawful employment practices." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311-12 (11th Cir. 2002) (citation omitted). McConnell must establish not only that she subjectively believed her employer was engaged in unlawful employment practices, but also that her belief was objectively reasonable

6

in light of the facts.  Id.  To determine whether McConnell's belief was objectively reasonable, we consider the existing substantive law.  Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999). That said, the allegedly harassing conduct complained of by McConnell need not actually be sexual harassment, "but it must be close enough to support an objectively reasonable belief that it is." Id.

Here, the conduct alleged by McConnell was not remotely close enough to support an objectively reasonable belief that it constituted sexual harassment. Instead, the supervisors' conduct towards Davidson appears to have been motivated, at most, by personal animosity or jealousy, and not sex.  And in any case, McConnell failed to establish a causal connection between her internal complaint and her discharge. See Parks v. City of Warner Robins, 43 F.3d 609, 613 (11th Cir. 1995).  McConnell failed to establish that either Bledsoe or Sluss, the parties who made the decision to terminate her employment, was aware that she had complained of Edmonson's harassment of Davidson or that she had indicated that she would tell the EEOC, if asked, that she felt Davidson had been harassed. Accordingly, we hold that the district court did not err in granting summary judgment in favor of WestPoint Stevens.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**