[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12502
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-21200-PCH


KEVIN FORBES,

                    Plaintiff - Appellant,

versus

CITY OF NORTH MIAMI,

                    Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 14, 2013)

Before WILSON, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Plaintiff Kevin Forbes appeals the district court's grant of summary judgment in favor of his former employer, the City of North Miami, Florida (the City).  Forbes, a Jamaican-born black male, brought this action against the City pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e–2000e-17, and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. §§ 760.01–760.11.  After thoroughly reviewing the record and briefs, we affirm.

## I.  BACKGROUND

Forbes became a code enforcement officer for the City in 1995.  His duties included inspecting properties, investigating complaints of ordinance violations, and preparing reports.  In 2007, he received an appointment to the position of Code Administrator.  Two years later, the City eliminated his position and its superior office, Code Director.  In lieu of these positions, the City created the position of Code Enforcement Manager, which would report directly to the City Manager.  Forbes and five other City employees applied for the job, which ultimately went to Alan Graham, a white male.  Forbes accepted a "roll back" to his previous position as a code enforcement officer.

Beginning in November 2009, Graham notified Forbes that he had not filed his end-of-month report for October 2009, and that no entries of code violations had been made into the City's database for October or November 2009.  On December 9, 2009, Graham informed Forbes that he had not filed his November

2

2009 end-of-month report.  The following day, Graham e-mailed Forbes to notify him that, still, Forbes had not made any entries of code violations into the City's database.  Forbes did not reply to Graham's e-mail until December 13, 2009, when Graham specifically asked him to do so.

On February 2, 2010, Forbes filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the EEOC Charge), and the Florida Commission on Human Relations (FCHR), alleging racial discrimination based on: first, the City's failure to promote him to Code Enforcement Manager; and second, its failure to "bump" another less-senior employee at the same pay grade in favor of Forbes.  Forbes alleges that he told Graham about the EEOC Charge immediately; Graham counters that he did not hear about it until after Forbes's termination.

On February 9, 2010, concerned about the large number of outstanding open cases in Forbes's file, Graham directed Forbes in an e-mail not to open any new cases so that he could concentrate on "scheduling follow-up inspections, issuing notice of violation letters, issuing civil violation tickets, setting cases for enforcement hearings, and submitting maintenance and service order packet[s]." Forbes replied: "Alan, I do not appreciate you sending me an e-mail with directive of how to do my job.  How I achieve compliance and how I enforce the city codes in my assigned area is of my discretion."

3

On February 24, 2010, Forbes received a written reprimand in which Graham identified numerous deficiencies in Forbes's work, including discrepancies in his data entries, duplicative data entries, and failure to follow up with open cases.  From February 2010 to July 2010, the situation did not improve, and Forbes received more complaints from Graham.  Finally, on July 9, 2010, Graham recommended Forbes's termination.  On July 19, 2010, with the City Manager's approval, Rebecca Jones, the City's Director of Personnel Administration, terminated Forbes.

Forbes commenced this action in April 2011.  Among other things, Forbes alleged that after he filed the EEOC Charge, the City retaliated by issuing him a written reprimand that began a progressive disciplinary process ultimately resulting in his termination on July 19, 2010.  Forbes's complaint alleged five counts under Title VII and the FCRA: racial discrimination in violation of Title VII (Count I); racial discrimination in violation of the FCRA (Count II); retaliation in violation of Title VII (Count III); retaliation in violation of the FCRA (Count IV); and deprivation of due process in violation of the Fifth and Fourteenth Amendments and the Florida Constitution, for the City's failure to provide him with an appeal of the City's termination decision (Count V).

Following discovery, the district court granted summary judgment in favor of the City on all five counts, based in part on its finding that Forbes failed to make

4

out a prima facie case and that, in the alternative, even if Forbes had made a prima facie case, he had failed to show that the City's legitimate, nondiscriminatory reasons for his reprimand and termination were pretextual.  On appeal, Forbes challenges only the district court's grant of summary judgment on the retaliation claims

## II.  ANALYSIS

We review a grant of summary judgment de novo, using the same legal standards as the district court.  *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).  Summary judgment is appropriate when the pleadings, depositions, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although the moving party bears the burden of demonstrating that no genuine issue of material fact exists, *see Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006), the non-moving party must make a sufficient showing on each essential element of the case, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986).  "A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Brooks*, 446 F.3d at 1162 (internal quotation marks omitted).

5

## A. Retaliation Claims

To establish a prima facie case of retaliation under Title VII and the FCRA,[1] Forbes must show: (1) that he engaged in statutorily protected activity; (2) that he suffered materially adverse employment action; and (3) that there was some causal relationship between the two events. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). If the employer proffers legitimate, non-discriminatory reasons for the adverse employment action, the plaintiff "must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (internal quotation marks omitted).

### 1. The Written Reprimand

Forbes argues that the district court erred when it held that his written reprimand, received two weeks after he filed his EEOC Charge, was not an adverse employment action. An adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (internal quotation marks omitted). Only those actions that have a "materially adverse effect on the plaintiff, irrespective of whether it is

---

[1] Our precedent interpreting Title VII applies to claims arising under the FCRA, and we therefore need not analyze the FCRA separately. *See Holland v. Gee*, 677 F.3d 1047, 1054 n.1 (11th Cir. 2012).

employment or workplace-related" will suffice. *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008).

We need not decide whether the written reprimand filed two weeks after Forbes's EEOC charge constitutes an adverse employment action, because even if it did, Forbes's claim would still fail. The City offered several legitimate, nondiscriminatory reasons for the written reprimand. Both before and after filing his EEOC Charge, Forbes failed to enter code violations into the City's database. Forbes was also delinquent on his end-of-month reports. Forbes argues that these reasons are pretextual, because Graham admitted that Forbes was a productive employee who opened and closed numerous cases as a code enforcement officer. That may well be true, but Forbes's overall performance cannot be properly measured by one metric, i.e. his proficiency at opening and closing cases.

The record demonstrates that the shortcomings outlined in the written reprimand had been raised by Graham, repeatedly, since November 2009. Based on all of this, we are satisfied that the City's legitimate, non-discriminatory reasons for Forbes's termination were not pretextual.

## 2. Forbes's Termination

Next, Forbes argues that the district court erred when it concluded that no causal relationship existed between his February 2 EEOC Charge and his July 19 termination. Again, we agree with the district court's analysis.

7

Although close temporal proximity between the statutorily protected expression and the adverse employment action can show a causal relationship, "[a] three to four month disparity . . . is not enough." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam).  The gap between Forbes's EEOC Charge and his termination was over five months, and "in the absence of other evidence tending to show causation," Forbes's retaliation claim must fail.  *Id.*  As we noted earlier when discussing Forbes's written reprimand, there is no evidence that Forbes's termination resulted from anything other than unsatisfactory work.

## B.  Insubordination

We need not devote more than a few sentences to Forbes's final argument: that the trial court erred in requiring him "to prove that he had not been insubordinate when the defendant had offered no evidence that insubordination was why it fired him."  "Insubordination" simply means "[a] willful disregard of an employer's instructions, [especially] behavior that gives the employer cause to terminate a worker's employment."  Black's Law Dictionary 802 (7th ed. 1999).  We have already noted that one of the City's non-discriminatory reasons for Forbes's termination was his unwillingness to do what Graham said—namely, to enter code violations into the database and file his end-of-month reports.  Consider Forbes's e-mail to Graham: "Alan, I do not appreciate you sending me an e-mail

8

with directive of how to do my job. How I achieve compliance and how I enforce the city codes in my assigned area is of my discretion." After the City proffered these reasons, it was Forbes's burden to demonstrate that they were pretextual. *See Crawford*, 529 F.3d at 976. He did not do so.

**AFFIRMED**.