[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-14122

Non-Argument Calendar

————————————

ERICA BANKS,
ANDREA TONEY,
DEMETRIA WIDEMAN,
JESSICA WASHINGTON,

Plaintiffs-Appellants,

*versus*

CITY OF ATLANTA, GEORGIA,
CHARLES EWING,
in his Individual Capacity,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03946-WMR

————————————

Before LUCK, LAGOA and DUBINA, Circuit Judges.

PER CURIAM:

Erica Banks, Andrea Toney, Demetria Wideman, and Jessica Washington (collectively, the "Plaintiffs") appeal from the district court's order granting summary judgment to their employer, the City of Atlanta (the "City"), on their claims of sexual harassment and gender discrimination pursuant to Title VII and 42 U.S.C. § 1983. On appeal, the Plaintiffs argue that the district court erred in granting summary judgment to the City because a jury question existed as to whether the City had notice of employee Charles Ewing's alleged sexual harassment before the Plaintiffs initiated their formal complaints but failed to take prompt remedial action. Having read the parties' briefs and reviewed the record, we affirm the district court's order granting summary judgment to the City.[1]

**I.**

---

[1] Ewing did not file a motion for summary judgment on the Plaintiffs' 42 U.S.C. § 1983 and battery claims against him.

We review *de novo* a district court's grant of summary judgment. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute of material fact and compels judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). A factual dispute is genuine if it has a real basis in the record and the evidence is such that a reasonable jury could rule in favor of the nonmovant. *Ellis v. England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005).

## II.

Title VII prohibits discrimination in employment based on sex. 42 U.S.C. § 2000e-2(a)(1). "[I]ntangible forms of discrimination, such as being forced to work in a sexually hostile work environment, constitute actionable discrimination under Title VII." *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1279 (11th Cir. 2003) (*citing Meritor Sav. Bank, FSB v. Vinson*, 477 U.S 57, 64, 106 S. Ct. 2399, 2404 (1986)). To establish a hostile work environment claim, a plaintiff must show:

> (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working

> environment; and (5) that the employer is responsible
> for such environment under either a theory of vicari-
> ous or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). "Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Id.* at 1278.

In contrast, where the perpetrator of the harassment is a supervisor of the victim, and "the supervisor's harassment involves no adverse 'tangible employment action,' an employer can avoid vicarious liability for the supervisor's conduct by raising and proving the" *Faragher/Ellerth*[2] affirmative defense. *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). To successfully interpose this defense, the employer must show: "(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293. Because it is an affirmative defense, the employer bears the burden of establishing both prongs. *Frederick*, 246 F.3d at 1313.

---

[2] *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998).

The employer's promulgation and dissemination of an anti-harassment policy is fundamental to meeting the requirement for exercising reasonable care in preventing sexual harassment. *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298-99 (11th Cir. 2000). Indeed, "an employer is insulated from liability under Title VII for a hostile environment sexual harassment claim premised on constructive knowledge of the harassment when the employer has adopted an anti-discrimination policy that is comprehensive, well-known to employees, vigorously enforced, and provides alternate avenues of redress." *Farley v. Am. Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir. 1997). Nevertheless, if there is evidence that an employer had actual notice of the harassment, "then it is liable unless it took prompt corrective action." *See Madray*, 208 F.3d at 1299; *see also Farley*, 115 F.3d at 1554 ("Where there is evidence from which a jury reasonably could infer that the employer *did* know of the harassment . . . the existence of a policy—no matter how well-designed—will not absolve an employer of liability under Title VII.") (emphasis in original). "[T]he question of whether an employer timely acted to correct harassment turns on when it had proper notice of an employee's harassment complaint." *Frederick*, 246 F.3d at 1315.

In *Madray*, we determined that the plaintiffs' informal complaints to various mid-level managers, not designated as appropriate representatives by the anti-harassment policy, did not place the employer on notice of the alleged sexual harassment. 208 F.3d at 1300. There, not only had the plaintiffs complained to various

mid-level managers, but two of the managers had witnessed the harasser engage in sexually inappropriate behavior towards the plaintiffs. *Id.* at 1293-94. We nevertheless held that the plaintiffs' informal complaints did not place their employer on notice.

We reasoned that even if the mid-level managers were considered agents of the employer, "the context surrounding the plaintiffs' comments to these individuals compel[led] the conclusion that these mid-level managers could not reasonably have been expected to act to address the plaintiffs' complaints." *Id.* at 1300 (citing *Coates v. Sundor Brands*, 164 F.3d 1361, 1365 (11th Cir. 1999)). We determined that the plaintiffs never "fully explained the full dimensions of their harassment . . . or approached these mid-level managers in a professional capacity to request assistance," and, after the plaintiffs did formally complain, the employer responded promptly to end the harassment. *Id.* at 1301. We, thus, concluded that the employer was entitled to interpose the *Faragher/Ellerth* defense, and we upheld summary judgment in the employer's favor. *Id.* at 1302-03.

Normally, the employer can satisfy its burden under the second element of the defense if it can demonstrate that an employee unreasonably failed to use any complaint procedure provided by the employer. *Faragher*, 524 U.S. at 807-08. One of the primary obligations that an employee has "is to take full advantage of the employer's preventative measures." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1306-07 (11th Cir. 2007). Employees must "report harassment promptly, earlier instead of later, and the

sooner the better." *Id.* at 1307 (holding that the employee unreasonably delayed by filing her complaint three months after the first incident of sexual harassment).

Discrimination claims brought under 42 U.S.C. § 1983 are subject to the same standards of proof and use the same analytical framework as claims brought under Title VII. *See Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985) ("Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under . . . [§ 1983], the legal elements of the claims are identical."). To state a claim for relief under § 1983, a plaintiff must show that a person acting under the color of state law deprived him of a federal right. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

However, to hold a municipality liable under § 1983, a plaintiff must establish that her rights were violated pursuant to a "custom" or "policy" of the municipality, and municipal liability under § 1983 cannot be predicated on a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694, 98 S. Ct. 2018, 2036, 2037-38 (1978). "[A] municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin*, 261 F.3d at 1308 (citation omitted). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of

his actions." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360 (2011) (quotation marks omitted, alteration in original).

## III.

The record demonstrates that because the City established both prongs of its *Faragher/Ellerth* defense, and because no genuine dispute of fact existed as to whether it had notice of Ewing's alleged sexual harassment before the Plaintiffs initiated their formal complaints, the district court did not err in granting summary judgment to the City.  First, as to the Plaintiffs whom Ewing supervised—Banks, Wideman, and Toney—the district court did not err in granting summary judgment in the City's favor based on its *Faragher/Ellerth* defense. *See Frederick*, 246 F.3d at 1311.  By showing that it promulgated and disseminated a sexual harassment policy that contained multiple reporting options, the City met its burden of demonstrating that it exercised reasonable care to prevent sexual harassment. *See Madray*, 208 F.3d at 1298-99; *Frederick*, 246 F.3d at 1313.

Specifically, the record shows that the City introduced uncontroverted evidence that it maintained a database through which all employees could access its policies.  In addition, the City distributed its policies to employees at new-hire orientation, and it also provided an "alert" to all employees regarding updates to its policies in 2018, which included a directive instructing employees to read the updated policies. Despite the Plaintiffs' argument that the general manager lacked awareness of the policy and had not received sexual harassment training, because the City adopted an

anti-harassment policy that was comprehensive, well-known to most employees, and provided alternate avenues of redress, it is insulated from liability for the Plaintiffs' Title VII claims premised on constructive knowledge.

As to the second element of the City's *Faragher/Ellerth* defense, the record supports the district court's conclusion that Banks, Wideman and Toney unreasonably failed to take advantage of preventative or corrective opportunities due to their delay in initiating their formal complaint. *See Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293. Viewing the Plaintiffs' sworn statements in their EEOC charge forms, which indicate the dates that Ewing's harassment of each began, Wideman delayed complaining for more than four years; Banks delayed complaining for more than two years; and Toney delayed complaining for more than three months. These delays are in juxtaposition to their obligation to "report harassment promptly, earlier instead of later," and their failure to use the City's designated complaint procedure suffices to satisfy the City's burden under the second element of its *Faragher/Ellerth* defense. *See Faragher*, 524 U.S. at 807-08, 118 S. Ct. at 2293; *Baldwin*, 480 F.3d at 1306-07. Thus, because the City established both prongs of its *Faragher/Ellerth* defense, the district court correctly granted summary judgment in its favor as to the Plaintiffs' Title VII claims.

Next, as to Washington's Title VII claim that the City is directly liable to her as Ewing's co-employee, there is no genuine dispute of fact about whether the City knew or should have known of

Ewing's misconduct but failed to take prompt remedial action. *See Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. 2552; *Miller*, 277 F.3d at 1278. The City's anti-harassment policy insulated it from liability premised on constructive notice. Further, because the City suspended Ewing, investigated him, and fired him within days of receiving the first formal complaint, there is no basis in the record to support a finding that the City failed to take prompt remedial action after it received actual notice of his misconduct. *See Ellis*, 432 F.3d at 1325-26; *Farley*, 115 F.3d at 1554. Thus, the district court did not err in granting summary judgment against Washington's Title VII claim.

Third, as to the Plaintiffs' § 1983 claims, not only do those claims fail because they cannot establish an essential element of their Title VII claims, but they also cannot establish that their rights were violated pursuant to a "policy or custom" of the City. *See Monell*, 436 U.S. at 694, 98 S. Ct. at 2037-38; *Stallworth,* 777 F.2d at 1433. Considering the Plaintiffs' inability to show that the City had notice of Ewing's misconduct prior to 2019, there is no basis in the record to support a finding that the City tacitly authorized or displayed deliberate indifference towards his misconduct. *See Ellis*, 432 F.3d at 1325-26; *Griffin*, 261 F.3d at 1308.

Accordingly, based on the aforementioned reasons, we affirm the district court's order granting summary judgment to the City.

**AFFIRMED.**