[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-10819

Non-Argument Calendar

————————————————

SYLVIA E. CRANE,

Plaintiff-Appellant,

*versus*

POSTMASTER GENERAL UNITED STATES POSTAL
SERVICES,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-00572-CLM

_____

Before JILL PRYOR, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

Sylvia Crane appeals the district court's denial of her motion for a new trial after a jury returned its verdict in favor of her former employer, the U.S. Postal Services ("USPS"), in her claims for failure to accommodate and retaliation under the Rehabilitation Act. On appeal, Crane argues that: (1) the district court abused its discretion in denying her motion for a new trial as to her failure-to-accommodate claim because the jury's finding that she was not disabled was against the clear weight of the evidence; and (2) the district court abused its discretion in denying her motion for a new trial as to her retaliation claim because the jury's finding that she failed to engage in statutorily protected activity when she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") was against the clear weight of the evidence. After careful review, we affirm.

I.

We review a district court's denial of a motion for a new trial for abuse of discretion. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013). "A judge should grant a motion for a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d

1183, 1186 (11th Cir. 2001) (quotations omitted). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great -- not merely the greater -- weight of the evidence." *Id.* (quotations omitted). "When there is some support for a jury's verdict, it is irrelevant what we or the district judge would have concluded." *Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1215 (11th Cir. 1991).

## II.

First, we are unpersuaded by Crane's claim that the district court abused its discretion in denying her motion for a new trial as to her failure-to-accommodate claim. To prevail on a claim brought under the Rehabilitation Act, an employee must show that she was discriminated against on account of her disability. *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 831 (11th Cir. 2017). "Unlawful discrimination under the Rehabilitation Act includes failing to provide reasonable accommodations for employees' known disabilities." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1334 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 2465 (2023).

"Discrimination claims under the Rehabilitation Act are governed by the same standards used in [Americans with Disabilities Act ('ADA')] cases," and decisions under the former are precedential on the latter and vice versa. *Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000). Under the ADA, an employee is disabled "if she has an impairment that substantially limits a major life activity . . . as compared to most people in the general population."

*Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1272 (11th Cir. 2020) (quotations omitted).  The ADA defines major life activities to include working and "the operation of a major bodily function," which includes digestive, bowel, and bladder functions.    42 U.S.C. § 12102(2)(A)–(B).

We've previously held -- at the summary judgment stage of a case -- that an employee with incontinence issues failed to create a genuine issue of material fact as to whether she was disabled under the ADA.  *Swain v. Hillsborough Cnty. Sch. Bd.*, 146 F.3d 855, 856, 857–58 (11th Cir. 1998).  There, we noted that the plaintiff had "presented no evidence to show that she cannot perform a broad range or class of jobs; instead, she simply makes the vague assertion that she is unable to perform any job that precludes her from having regular access to a restroom."  *Id*. at 858.

Here, the district court did not abuse its discretion in denying Crane's motion for a new trial because the jury's verdict was not against the clear weight of the evidence or a miscarriage of justice.  *Lamonica*, 711 F.3d at 1312.[1]  As for Crane's alleged disability -- that she needs to urinate frequently and urgently -- evidence in the record supports the jury's finding that Crane's condition did not rise to the level of a disability.  For instance, the jury heard evidence

---

[1] We note that Crane has pointed out that USPS inconsistently argued whether she was disabled.  Even if true, this inconsistency is insignificant.  Under our case law, *Crane* had the burden of demonstrating that she was disabled, *see Silva*, 856 F.3d at 831, and, at trial, the determination of whether Crane was disabled was left to the jury, not USPS.

from Crane's supervisor, Judy Ling, who believed that Crane's urinary issues were not a disability and that some people simply went to the bathroom more than others. The jury also heard evidence from Crane's coworkers who had similar urinary issues or thought the issue was not uncommon; one of them testified that she thought Crane had the same bladder problems that she did, as an older woman who had children. This evidence supports the jury's conclusion that Crane was not disabled because she did not have an impairment that substantially limited a major life event, as compared to the general population. *Munoz*, 981 F.3d at 1272; 42 U.S.C. § 12102(2)(A)-(B).

As for Crane's claim that management's imposition of a rule that she let someone know when she was going to the restroom effectively rendered her disabled, it fails as well. As the record reflects, other clerks, including those who discussed similar urinary issues, also had to let someone know that they were going to the restroom so that someone could cover the service window, which was as easy as ringing a bell or getting someone else's attention. And while Crane had to take the extra step to notify management when she was going to the restroom, as corroborated by postmaster Mary Crabtree, the jury heard that Crane was never delayed from going to the restroom, and that there was a reason for the rule -- Crane previously had failed to notify anyone when she was leaving the window while customers were waiting.

Moreover, the only evidence Crane offered in support of her disability came from her and Dr. Lachman. However, Dr.

Lachman was a psychiatrist and not a urologist or gynecologist; he testified as to Crane's urinary issues as a physical manifestation of her mental distress; he based his opinion on Crane's own statements and not on any medical evaluation. Crane offered no other expert testimony about a diagnosis for urinary frequency and urgency other than Dr. Lachman's.

All told, the jury weighed the evidence and determined that Crane was not disabled under the Rehabilitation Act. Thus, regardless of whether urinary frequency and urgency, or even urinary frequency, could *per se* be a disability, the jury's verdict finding that Crane's impairment was not a disability is not against the clear weight of the evidence and would not result in a miscarriage of justice. Accordingly, the district court did not abuse its discretion in denying Crane's motion for a new trial.

### III.

We similarly find no merit to Crane's argument that the district court abused its discretion in denying her motion for a new trial as to her retaliation claim. To prevail on her claim of retaliation under the Rehabilitation Act, Crane needed to show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) the protected activity was causally connected to the adverse employment action. *See Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (ADA); *see also* 29 U.S.C. §§ 791(g), 793(d), 794(d) (Rehabilitation Act provisions incorporating the anti-retaliation provision from § 12203(a) of the ADA).

To establish that a plaintiff has engaged in statutorily protected activity, we have held that a plaintiff must show that she had a good-faith, reasonable belief that the employer was engaged in unlawful employment practices. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). A plaintiff must show that she subjectively, i.e., in good faith, believed that her employer was engaged in unlawful employment practices and that that belief was objectively reasonable in light of the facts and record presented. *Id.* at 1312. "It thus is not enough for a plaintiff to allege that h[er] belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.* (quotations omitted). We have recognized that filing a complaint with the Equal Employment Opportunity Commission ("EEOC") is protected activity. *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998).

Here, the district court again did not abuse its discretion in denying a new trial because the jury's conclusion that Crane did not engage in protected activity was not against the clear weight of the evidence and was not a miscarriage of justice. *Lamonica*, 711 F.3d at 1312. For starters, even if we assume that Crane's alleged protected activity was that she had filed an EEOC complaint, the evidence supports the jury's verdict because Crane failed to show that she had a good-faith, reasonable belief that USPS was engaged in unlawful employment practices. *Weeks*, 291 F.3d at 1311. At trial, the jury learned that Crane had filed numerous EEOC complaints and grievances for a range of issues, including discrimination based on her alleged disability, sex, race, color, age, and genetic

information.  But by doing so, Crane appeared to have taken a shot-gun approach and to have alleged whatever she could until something stuck -- making it reasonable for the jury to infer that her belief was not in good faith.  *Id.*  Further, as we've noted, the evidence suggested that Crane's belief was not objectively reasonable because the jury heard that the reason she was instructed to let someone know when she was going to the restroom -- as was everyone else in the office -- was that she had previously left the service window empty while customers were waiting without letting anyone know, against USPS policy.

In short, the jury's verdict supports the conclusion that Crane's belief that USPS engaged in unlawful employment practices was not in good faith or reasonable, so she failed to establish that she engaged in statutorily protected activity for purposes of her retaliation claim.  Accordingly, the jury's verdict was not against the clear weight of the evidence nor did it result in a miscarriage of justice, so the district court did not abuse its discretion in denying Crane's motion for a new trial.

**AFFIRMED.**