**Daniel MARRIA, Plaintiff-Appellant,**

v.

**C.R. ENGLAND, INC. Defendant-Appellee.**

No. 15-14453

United States Court of Appeals, Eleventh Circuit.

Filed (February 10, 2017)

Thomas Vernon Burch, Rachel Bishop, University of Georgia School of Law, Athens, GA, Daniel Marria, Atlanta, GA, for Plaintiff-Appellant

Joseph C. Chancey, Megan Mathews Noble, Drew Eckl & Farnham, LLP, Atlanta, GA, for Defendant-Appellee

* Honorable Susan C. Bucklew, United States District Judge for the Middle District of Flori-

Before WILSON and JILL PRYOR, Circuit Judges, and BUCKLEW,* District Judge.

PER CURIAM:

Daniel Marria appeals the district court's order granting summary judgment in favor of his former employer, C.R. England, Inc. ("C.R. England"), on Marria's retaliation action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. After careful review of the record, and with the benefit of oral argument, we affirm.

## BACKGROUND

C.R. England is a family-owned carrier company headquartered in Utah. In August 2011, C.R. England accepted Marria into its premier truck driver school but dropped him from the program in November 2011 due to his inability to perform essential driving functions. C.R. England reaccepted Marria into the driving school program in January 2012. Upon both instances of enrollment in the driving school program, Marria received a copy of C.R. England's Policy Manual (the "Policy Manual"). The Policy Manual provided that every accident "shall be considered chargeable unless it is established by investigation and review that there was no action that the driver could have reasonably taken to avoid the accident and that his/her actions in no way contributed to the occurrence of the accident." App. Vol. 2, Tab 1, p. 52. In the event that an accident is determined to be chargeable, the Policy Manual provided that the "driver will either receive retraining or be terminated." *Id.*

After Marria successfully completed C.R. England's driving school program, he

da, sitting by designation.

began working as a student truck driver on February 8, 2012, and then as a solo truck driver on May 22, 2012. On June 7, 2012, Marria's truck struck a metal pole at a loading dock in Pennsylvania.

In accordance with the Policy Manual, C.R. England evaluated the accident and made an initial determination that the accident was chargeable to Marria. Marria appealed the determination to the C.R. England Review Board in Salt Lake City, Utah. C.R. England scheduled Marria to transport a load to Utah so that he could attend the Review Board hearing on July 30, 2012. The Review Board concluded that the accident was chargeable to Marria, and it directed him to complete mandatory retraining in accordance with C.R. England policy by July 31, 2012. Marria did not complete retraining as directed, and he was suspended effective July 31, 2012. On August 6, 2012, Marria appeared at C.R. England's Safety Office, where he was scheduled for retraining. However, Marria again failed to complete the mandatory retraining. Marria asserts C.R. England required him to complete retraining in a truck with a manual transmission, which he refused to do because he had driven an automatic transmission since joining C.R. England.

On August 8, 2012, Marria sent a letter to C.R. England's Executive Vice President, Corporate Vice President, and Director of Safety expressing his disagreement with the Review Board's decision and requesting an appeal. However, C.R. England had no policy for further accident review beyond the Review Board.

On August 10, 2012, Marria completed an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire in which he alleged he was subjected to retaliation by C.R. England and expressed his intent to file a Charge of Discrimination with the EEOC. Specifically, Marria alleged that C.R. England retaliated against him by requiring him to travel to Utah for the Review Board hearing. Further, Marria asserted that C.R. England's refusal to accept evidence from a witness at his initial hearing was discriminatory and that he was disadvantaged by C.R. England's insistence on his retraining being completed in a manual truck. C.R. England admits that it received a copy of the EEOC Intake Questionnaire on August 10, 2012.

On August 16, 2012, Marria returned to C.R. England's Safety Office and asked whether he could complete the required retraining using his own truck, which had an automatic transmission. C.R. England contends it agreed to allow Marria to use his own truck and scheduled him for retraining that afternoon. Marria contends that C.R. England never informed him that he could use his own truck or that his retraining had been scheduled. There is no dispute, however, that Marria did not retrain on August 16, 2012.

On August 17, 2012, Marria's supervisor, Justin Kelsch, sent an email to Larry Luke, C.R. England's Operation Safety Manager Officer, inquiring about Marria's status with C.R. England. Luke responded with the following email:

> He had his hearing and the board found the accident chargeable but your driver refused to do [sic] complete the accident review or do the mandatory retraining. He then disappeared, showing up 8/6 and spoke to another safety manager who sent him out for a standard road evaluation with Ken Harwood, he again refused to do the evaluation and told Ken he didn't know why he had to do the eval and again disappeared. He appeared at my desk yesterday, I asked where have you been, he responded "just living in my truck" [sic] I asked if he was ready to do his accident retraining and he said he didn't want to sign

anything and wanted me to explain again why he had to do a road eval because he still doesn't take responsibility for the accident. I explained again everything about our procedures and suggested he read the policy manual. I also made arrangements for him to use his own truck in the eval (which is not the normal procedure. He said he would return at noon to discuss his 3 pm road evaluation (third attemp [sic] for retraining) but never showed back up at noon and was a "no show" for his road evaluation with Ken Harwood our evaluator. When my supervisor gets in this morning I am going to review him for a termination. He has also filed a suit against me and CRE.[1]

App. Vol. 2, Tab 2, p. 255. Marria was terminated later that day. In an email regarding Marria's termination, Luke stated Marria was terminated for refusing to complete the required road evaluation and mandatory retraining after being found chargeable for the accident. On August 20, 2012, three days after his termination, Marria filed a Charge of Discrimination with the EEOC.

Marria subsequently initiated this Title VII action against C.R. England in which he asserts his termination was in retaliation for filing the EEOC Intake Questionnaire. C.R. England moved for summary judgment. The motion was referred to a magistrate judge, who issued a report and recommendation recommending that C.R. England's motion be granted. The district court adopted the magistrate judge's report and recommendation and entered summary judgment for C.R. England. Marria now appeals.

1. There is no dispute that, by "suit," this email references Marria's August 10, 2012

## STANDARD OF REVIEW

We review the district court's summary judgment ruling de novo, using the same legal standards as the district court. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). Although the moving party bears the burden of demonstrating that no genuine issue of material fact exists, *see Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006), the non-moving party must make a sufficient showing on each element of the case, *see Am. Fed'n of Labor v. City of Miami*, 637 F.3d 1178, 1187–88 (11th Cir. 2011). We must "view[ ] the record and draw[ ] all reasonable inferences in the light most favorable to the non-moving party." *Weeks*, 291 F.3d at 1311. "A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks*, 446 F.3d at 1162 (internal quotation marks omitted).

## DISCUSSION

Title VII prohibits an employer from retaliating against an employee because he "has opposed any practice made an unlawful employment practice" by Title VII or because he "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). To make out a prima facie case of retaliation under Title VII, the plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action by the employer; and (3) a causal connection exists between the protected activity and the adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). The causal connection

EEOC Intake Questionnaire.

required to satisfy the showing is "but-for" causation, which requires the plaintiff to show that he would not have suffered the adverse action if he had not engaged in the protected conduct. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar,* —— U.S. ——, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013). A plaintiff may make the required showing through either direct evidence or circumstantial evidence. *See Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1085 (11th Cir. 2004).

Marria alleges that his termination by C.R. England was in retaliation for completing the EEOC Intake Questionnaire.[2] He argues that both direct and circumstantial evidence support his claim. We address each of these arguments in turn.

## I. Direct Evidence of Retaliation

█ Marria seeks to avoid summary judgment by first arguing that Luke's August 17, 2012 email, which references the EEOC Intake Questionnaire, is direct evidence of retaliation sufficient to create a genuine issue of material fact. We define direct evidence as "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Wilson,* 376 F.3d at 1086 (internal quotation marks omitted). Direct evidence "establishes the existence of discriminatory intent behind [an] employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998). "As our precedent illustrates, ... only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor" constitute direct evidence of discrimination. *Rojas v. Florida,* 285 F.3d 1339, 1342 n.2 (11th Cir. 2002). Evidence that is subject to more than one interpretation does not constitute direct evidence. *Harris v. Shelby Cnty. Bd. of Educ.,* 99 F.3d 1078, 1083 n.2 (11th Cir. 1996).

Even after viewing the record and drawing all reasonable inferences in the light most favorable to Marria, Luke's reference to Marria's EEOC Intake Questionnaire in his August 17, 2012 email is not direct evidence of retaliation. *See Weeks,* 291 F.3d at 1311. While the reference is made in the same email that states Marria will be reviewed for termination, it does not demonstrate impermissible bias or the intent to act on that bias. Indeed, this statement could reasonably be construed as a natural and understandable factual reference to Marria's EEOC Intake Questionnaire when discussing Marria's background and contemplated termination. Luke's statement does not prove a retaliatory animus "without any inference or presumption," and it is not direct evidence of retaliation sufficient to create a genuine issue of material fact. *See Standard,* 161 F.3d at 1330. The district court, therefore, correctly concluded that Marria did not present direct evidence of retaliation.

## II. Circumstantial Evidence of Retaliation

Marria next argues that he presented sufficient circumstantial evidence to create a genuine issue of material fact as to whether his termination was in retaliation for completing the EEOC Intake Questionnaire. In evaluating retaliation claims relying on circumstantial evidence, we use the

---

**2.** Marria mistakenly refers to his August 10, 2012 EEOC Intake Questionnaire as an "EEOC Charge." While Marria did file an EEOC Charge on August 20, 2012, it is of no moment to Marria's retaliation claim because this filing occurred after Marria's termination. Only Marria's August 10, 2012 EEOC Intake Questionnaire is relevant to this appeal.

framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). Under this framework, the plaintiff must first establish a prima facie case that the adverse action was retaliatory. *Id.*

When the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the employer to demonstrate a legitimate, non-retaliatory reason for its actions. *Id.* at 1181–82. If the employer satisfies this "exceedingly light" burden by producing rebuttal evidence of a legitimate rationale for its decision, the plaintiff must then prove that the proffered explanation is pretextual. *Smith v. Horner*, 839 F.2d 1530, 1537 (11th Cir. 1988). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Wilson*, 376 F.3d at 1088. Quarrelling with the wisdom of the reason is not sufficient. *Id.* "To survive summary judgment, the plaintiff must … present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

Also, a plaintiff's claim will survive summary judgment if he otherwise presents "enough circumstantial evidence to raise a reasonable inference" that an adverse action was taken against him in violation of Title VII. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012). In order to do so, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action

that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks omitted).

### a. Prima Facie Case

We are satisfied that Marria has carried his initial burden of establishing a prima facie case for retaliation. There is no dispute that Marria engaged in a protected activity (completing the EEOC Intake Questionnaire) and suffered an adverse employment action (termination). Moreover, the close temporal proximity (seven days) between the protected activity and his termination is sufficient to satisfy the casual element. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) ("constru[ing] the causal link element broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated") (internal quotation marks omitted); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that the burden of causation can be met by showing a "very close" temporal proximity between the statutorily protected activity and the adverse employment action). Indeed, C.R. England does not dispute that Marria has established a prima facie case of retaliation. Accordingly, the crux of the issue before us is whether C.R. England demonstrated a legitimate, non-discriminatory reason for Marria's termination and whether Marria has shown that the reason is pretextual.

### b. Legitimate Non-Retaliatory Reason and Pretext

■ C.R. England showed a legitimate, non-retaliatory reason for terminating Marria: Marria's failure to complete mandatory retraining after the Review Board

found his accident chargeable. Thus, the burden of production shifts to Marria, who must show that the demonstrated reason is a pretext for retaliation. *See Smith,* 839 F.2d at 1537. Marria primarily relies on two facts in support his claim of pretext: the temporal proximity between the protected activity and Marria's termination and Luke's reference to the EEOC Intake Questionnaire in his August 17, 2012 email.

Even after viewing the record and drawing all reasonable inferences in the light most favorable to Marria, we hold that Marria failed to produce sufficient evidence that C.R. England's proffered non-retaliatory reason was pretextual. *See Weeks,* 291 F.3d at 1311. Luke's email statement that Marria "filed suit" against him—even in light of the temporal proximity between the protected activity and Marria's termination—is not enough to create a dispute of fact as to C.R. England's true motivation. In the same email, Luke explained that Marria would be reviewed for termination because he refused to comply with C.R. England's Policy Manual and directions after he was found chargeable for the accident. Marria was engaged in workplace misconduct—his refusal to retrain—before completing the EEOC Intake Questionnaire. That Marria was terminated seven days after completing the EEOC Intake Questionnaire and Luke's reference to the EEOC Intake Questionnaire was in the same email that discussed Marria's termination is simply not enough to create a disputed issue of fact as to C.R. England's motivation for Marria's termination.

Marria also asserts that his termination was retaliatory because C.R. England lacked an employment policy identifying "failure to re-train" as grounds for termination. This assertion is not supported by the record because C.R. England's Policy Manual states its drivers are at-will employees and "will either receive retraining or be terminated" if found chargeable for an accident.

Marria also cites as circumstantial evidence of retaliation C.R. England's failure to wait for Marria's termination to occur automatically as provided for in the Policy Manual, C.R. England's creation of unreasonable barriers to Marria's ability to retrain by refusing to allow Marria to drive a truck with an automatic transmission during his retraining, and C.R. England's failure to respond to Marria's internal complaint over the accident review process before terminating him. In making these arguments, Marria fails to rebut C.R. England's legitimate, non-retaliatory reason head on— Marria simply quarrels with the wisdom of C.R. England's policies and decisions leading up to his termination. *See Wilson,* 376 F.3d at 1088.

It is not our role to adjudge whether business decisions "are prudent or fair." *See Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999). Instead, we must determine whether Marria has carried his burden of presenting substantial evidence that C.R. England's legitimate, non-retaliatory reason for terminating him is pretextual. In light of the record before us, we conclude that Marria has failed to carry this burden. C.R. England's stated legitimate, non-retaliatory reason for Marria's termination is supported by the record. We therefore affirm the district court's final summary judgment in favor of C.R. England.

**AFFIRMED.**